**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

      **Plaintiff**

      v.

GIOVANNY CRUZ-OSORIO,

      **Defendant**

**CIVIL NO. 22-285 (RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is Defendant Giovanny Cruz-Osorio's ("Defendant" or "Cruz") *Motion Requesting Order to Compel Discovery or Motion to Dismiss Indictment* ("*Motion*"). (Docket No. 58). For reasons discussed below, the Court **DENIES** the *Motion.*

**I.   BACKGROUND**

    On June 17, 2022, United States Customs and Border Protection ("CBP") officers inspected the Defendant's luggage after he arrived at Airport Aviation Services' ("AAS") hangar at the Luis Muñoz Marín International Airport ("LMM") in Puerto Rico from St. Thomas.[1] (Docket No. 1-1 ¶¶ 8-10). In doing so, they allegedly

---

[1] AAS is a fixed-base operator. A fixed-base operator "provides facilities, fuel, equipment, supplies and services at an airport which are used by aircraft, crews, passengers and in handling freight connected therewith." <u>E. W. Wiggins Airways, Inc. v. Massachusetts Port Auth.</u>, 362 F.2d 52, 53 n.2 (1st Cir. 1966); *see also* <u>Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n</u>, 610 F.3d 8, 9-10 (1st Cir. 2010) (providing similar definition). AAS operates a General Aviation Facility at LMM separate from the primary commercial terminals that services, among other things, private flights. *See* <u>CBP to operate from a New General Aviation Facility inaugurated at the Luis Muñoz Marín International Airport</u>, CBP (August 3, 2018), https://www.cbp.gov/newsroom/local-media-

discovered that the luggage contained approximately nine kilograms of cocaine. Id. at 13.

Subsequently, the Grand Jury returned an indictment (the "Original Indictment") on June 23, 2022 charging Mr. Cruz with importation of a controlled substance in violation of 21 U.S.C. §§ 952(a), 960(a), and 960(b)(1)(B) and 18 U.S.C. § 2 (Count One) and possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2 (Count Two). (Docket No. 13 at 1-2).

On May 17, 2023, the Defendant filed his *Motion*, seeking the production of relevant video footage from both LMM and the airport in St. Thomas. (Docket No. 58 at 14). In the alternative, he requests dismissal of the Original Indictment on the grounds that the Government violated the rule of Brady v. Maryland, 373 U.S. 83 (1963), in failing to disclose exculpatory evidence. Id.

On May 31, 2023, the Grand Jury returned a Superseding Indictment charging Mr. Cruz with conspiracy to import a controlled substance in violation of 21 U.S.C. §§ 952(a), 960(a), 960(b)(1)(B), and 963 (Count One); importation of a controlled substance in violation of 21 U.S.C. §§ 952(a), 960(a), and 960(b)(1)(B) and 18 U.S.C. § 2 (Count Two); conspiracy to possess

release/cbp-operate-new-general-aviation-facility-inaugurated-luis-mu-oz-marin.

with intent to distribute a controlled substance in violation of
21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846 (Count Three);
and possession with intent to distribute cocaine in violation of
21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2
(Count Four). (Docket No. 67 at 1-3). Accordingly, the arguments
made by Defendant in his *Motion* are extended to the Superseding
Indictment.

On June 6, 2023, the United States of America (the
"Government") filed its *Response in Opposition*. (Docket No. 75).
First, the Government claims that the Defendant's motion to compel
is moot in part because no video footage from LMM is available,
and it explained the process by which law enforcement officers
attempted, albeit unsuccessfully, to preserve footage. Id. at 3-
4. The Government also represents that there is no available
footage from the airport in St. Thomas. Id. at 5. Second, the
Government argues that the motion to dismiss should be denied
because Mr. Cruz has failed to show that the spoliation of the
footage was caused by bad faith on the part of the Government or
that the footage is either exculpatory or irreplaceable. Id. at 6-
11. Moreover, the Government claims that Defendant failed to
establish that a Brady violation occurred. Id. at 11-13.

An evidentiary hearing regarding the circumstances surrounding the loss of the video footage at LMM was held on October 18, 2023. (Docket No. 103).

## II.  FINDINGS OF FACT

The following facts are derived from the testimony heard during the evidentiary hearing and the exhibits admitted into evidence. During the evidentiary hearing, the Defendant presented exhibits and the following witnesses: Aerostar representative Brendaliz Velazquez-Salgado ("Velazquez"); AAS general counsel Jose Vazquez-Matos ("Vazquez"); CBP Officers Federico Perez-Rios ("Perez") and David Colon-Rosario ("Colon"); and Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Nasser Taha-Estrada ("Taha"). The Government conducted cross examination and presented a still image taken from the missing video footage as an exhibit.

### A. Ms. Velazquez's Testimony

Ms. Velazquez testified that she has been employed at Aerostar since 2018. Aerostar is a private company that manages LMM, including the airport's private security. LMM contains approximately 1,600 video security cameras, some of which are managed by Aerostar, and some of which are managed by outside agencies, including CBP. Aerostar does not have access to cameras managed by outside agencies. Aerostar does have cameras depicting

the external area of AAS's hangar which contains a CBP inspection area.

Videos captured by Aerostar cameras are kept for thirty days on Aerostar's computer systems. If not marked for preservation, the videos are deleted at the end of this period. As relevant here, videos are marked and saved if a request is made through Aerostar's legal department. Law enforcement officers make such video preservation requests via subpoena, and Aerostar receives subpoena requests very frequently.

On June 17, 2022, Aerostar cameras were generally operational, although Ms. Velazquez could not testify as to whether any specific cameras worked or if a specific video was taken. However, Aerostar did not receive any requests to preserve footage for June 17, 2022 until approximately June 2023, when the company was served with a subpoena by the Federal Public Defender's Office and the relevant videos had already been deleted. The Government stipulated that it did not request that Aerostar preserve any video from June 17, 2022.

**B. Mr. Vazquez's Testimony**

Mr. Vazquez testified that he is the general counsel of AAS. AAS maintains video cameras that cover, as relevant to this case, the external portions of the AAS hangar containing the CBP inspection area. In reference to a still image presented by defense

counsel of the hangar depicting four security cameras, Mr. Vazquez identified two cameras as being operated by AAS, one by Aerostar, and one by CBP.

Only authorized personnel have access to a live feed from the AAS cameras. No government agency has direct access to AAS cameras, and AAS videos are kept for twenty-five to thirty days before being automatically deleted. If there is a request to save video, the request is made in writing and evaluated by Mr. Vazquez. AAS received one such request in May of 2023 from the U.S. Attorney's Office for the District of Puerto Rico ("USAO-PR") to preserve video from June 17, 2022. Although Mr. Vazquez checked with AAS' security camera provider to see if there was a possibility to recover video from that date, the video had already been deleted. The request made in May 2023 by the USAO-PR was the only request for video preservation made by any federal agency to AAS since Mr. Vazquez began working there in March 2016.

### C. Officer Perez's Testimony

Officer Perez testified he has been a CBP officer for sixteen years. As part of his duties, he works at the San Juan Command Center, collecting information from events occurring at CBP areas of operation and monitoring videos from those areas. LMM is one such area of operation.

CBP maintains a live feed for video from LMM that is presented through an Aerostar system. Officer Perez has the capability to bookmark videos for preservation. If a video is not bookmarked, the Aerostar system will automatically delete it after thirty days. The decision to bookmark a video is made either by Officer Perez or by his supervisor.

On June 17, 2022, Officer Perez was working in the command center and reviewing cameras when he saw an event of interest at AAS' hangar at LMM. He observed a CBP inspection of passengers on an arriving flight. Specifically, Officer Perez saw that CBP officers were inspecting Mr. Cruz and his belongings. Because the event was out of the ordinary, Officer Perez informed his duty chief, Angel Santini ("Santini"). Officer Perez also took photos of the video live feed on his own phone and sent all the photos he took to Chief Santini for the duty chief's awareness of what Officer Perez was observing. After sending the photos, Officer Perez deleted them from his phone. Officer Perez was never asked to bookmark video from June 17, 2022.

Officer Perez acknowledged that he should have bookmarked the video but nevertheless did not. He also testified that, if he could go back, he would have definitely bookmarked the video, and that he had no intention of keeping others from seeing the video or of knowing what was on the video. The Government presented a still

image, which Officer Perez confirmed was one of the photos he had taken. He described it as depicting the inspection of Mr. Cruz's duffle bag and a box. Officer Perez stated that the unpreserved video would have shown that Mr. Cruz placed the duffle bag on the inspection table, that no other passenger moved or touched the duffle bag, and the box depicted in the Government's exhibit was taken from the duffle bag.

**D. Officer Colon's Testimony**

Officer Colon testified that he has worked at CBP for eight years and was on duty on June 17, 2022 at the security command center. At the time, he was monitoring the video feed at CBP facilities and observed the detention of a gentleman with dark complexion and black hair and tried to preserve the video related to that incident.

Officer Colon noted that video is only saved for thirty days. On his own initiative, however, he downloaded the video of the events he observed to his hard disk drive, which would preserve the video so long as the disk drive was operational. There are several cameras that provide different views of the CBP inspection area, and he saved all the video pertinent to the event from the lobby to the inspection area. A couple of months after June 17, 2022, Officer Colon received a request for a copy of the video from that date from an officer, but he did not recall who made the

request. Because Officer Colon did not have authorization to copy the video, he told the requestor to seek supervisory approval to retrieve the video from the hard disk drive. However, he never received authorization to copy the video. Sometime later, Aerostar removed the hard disk drive containing the saved video from Officer Colon's station because it was damaged.

Like Officer Perez, Officer Colon testified that he had no intention to destroy any video or hide what happened on the footage. He further stated that the still photo presented by the Government depicted what he had seen on the video. Officer Colon recalled that the video showed the detained person had arrived at the airport on a small plane containing two other passengers and a pilot, and that the other passengers had already passed through the inspection area with their luggage when he was detained. The detained person had with him two or three pieces of dark-colored or black luggage and handled the duffle bag that was placed on the CBP inspection table. Officer Colon recalled the detained person had touched the duffle bag, but he could not remember if anyone else had control over the luggage in the still image, and he testified that viewing the video of the events would have refreshed his recollection.

**E. TFO Taha's Testimony**

TFO Taha testified he had served as a HSI TFO for eighteen years, and that he been stationed at LMM for approximately twenty-six or twenty-seven years. On June 17, 2022, he was the duty agent covering the airport when he received a call from CBP about a person arriving from the U.S. Virgin Islands carrying narcotics. TFO Taha is familiar with the CBP inspection area at AAS and is the only case agent assigned to Mr. Cruz's case. His responsibilities include preparing the complaint affidavit and receiving evidence collected by CBP, including obtaining any video evidence. To do so, TFO Taha must request video through the CBP chain of command. He testified that he made a verbal request of the June 17, 2022 video footage to a supervisor, but could not recollect when the request was made. TFO Taha subsequently made three to four renewed verbal requests to multiple supervisors for the video. In response, he was told that CBP did not have the video, then that the footage had been lost, and then that the Aerostar servers had been damaged or burned. TFO Taha also took two failed Aerostar servers to HSI forensics in an unsuccessful attempt to recover video from June 17, 2022.

TFO Taha did not subpoena Aerostar or AAS for video footage from June 17, 2022. Although he was aware that video from the domestic side of LMM could be requested from Aerostar, in June

2022 he did not know that Aerostar had cameras on the "customs side" or maintained some CBP video. He also stated that AAS did not have cameras on the customs side. TFO Taha requests videos from the domestic side on a weekly basis, but he stated that requests for videos from the international side are far less frequent. He further testified that in the last two years, Mr. Cruz's was the only such case in which he had to request video from the international side. Finally, TFO Taha was aware that the videos would only be preserved for thirty days.

When asked by defense counsel if the reason the video footage no longer existed was because it would have shown events that were incompatible with the affidavit supporting the criminal complaint, TFO Taha responded "no."

TFO Taha also inquired about video from the airport in St. Thomas and learned that there was no camera for the area for small aircraft. Therefore, there was no relevant video footage from St. Thomas.

### III. APPLICABLE LAW

"[C]ases involving nondisclosure of evidence" fall "into two distinct universes." United States v. Femia, 9 F.3d 990, 993 (1st Cir. 1993). Brady, which establishes that the government violates a defendant's due process rights when it withholds favorable evidence that is "material to either guilt or punishment,

irrespective of the good faith or bad faith of the prosecution,"
373 U.S. at 87, spearheads the line of cases regarding exculpatory
evidence possessed by the government. Femia, 9 F.3d at 993. When
the Government no longer possesses disputed evidence, Arizona v.
Youngblood, 488 U.S. 51 (1988) and California v. Trombetta, 467
U.S. 479 (1984) control. Femia, 9 F.3d at 993.

Defendants seeking to suppress evidence formerly in the
government's possession "must show that the government, in failing
to preserve the evidence, (1) acted in bad faith when it destroyed
evidence, which (2) possessed an apparent exculpatory value and,
which (3) is to some extent irreplaceable." Id., 9 F.3d at 993–
94. The defendant bears the burden of proof on such a motion.
United States v. Ossai, 485 F.3d 25, 28 (1st Cir. 2007) (citing
United States v. Marshall, 109 F.3d 94, 98 (1st Cir. 1997)).

Generally, "in missing evidence cases, the presence or
**absence of good or bad faith by the government will be
dispositive**." Id. at 994 (emphasis added). The First Circuit has
held that even when evidence is destroyed intentionally or because
of gross negligence, this is insufficient to satisfy the
requirement of bad faith. See United States v. Garza, 435 F.3d 73,
75 (1st Cir. 2006) (citing United States v. Gallant, 25 F.3d 36,
39 n.2 (1st Cir. 1994) cert. denied, 547 U.S. 1158 (2006); Femia,
9 F.3d at 995). Rather, defendants "**must show 'independent evidence**

that the [government] was somehow improperly motivated.'" Garza, 435 F.3d at 75 (quoting Gallant, 25 F.3d at 39 n.2) (emphasis added).

## IV.  DISCUSSION

### A. Destroyed evidence cannot be produced in response to a motion to compel

Defendant requested an order compelling the government to produce video footage from both LMM and the airport in St. Thomas. (Docket No. 58 at 14). Although Mr. Cruz did not cite to any case law, his motion to compel appears to be a motion under Federal Rule of Criminal Procedure 16, which governs criminal discovery. Under the rule,

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:(i) the item is material to preparing the defense;(ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). Should a party fail to comply with the obligations of Rule 16, the district court may "order that party to permit the discovery or inspection . . . and prescribe other just terms and conditions," among other remedies. Fed. R. Crim. P. 16(d)(2)(A).

Defendant originally requested the disclosure of the video footage from both airports on September 27, 2022. (Docket No. 58 at 5). **As established by all the testimony at the evidentiary hearing, by that point in time, all unsaved or unmarked Aerostar, AAS, and CBP video footage of June 17, 2022 would have already been destroyed.** The testimony further established that any relevant video footage at LMM no longer exists. By its terms, Rule 16(a)(1)(E) is "directed to materials that the government actually possesses." United States v. Amaya-Manzanares, 377 F.3d 39, 42 (1st Cir. 2004). Accordingly, **the Government cannot be compelled to produce evidence that has been destroyed; nor is it accountable for evidence held by private entities such as Aerostar and AAS.** See United States v. Hughes, 211 F.3d 676, 688 (1st Cir. 2000) ("the government has no duty to produce evidence outside its control . . . and it is not responsible for the preservation of evidence that was never in its control in the first place[.]") (citations omitted).

The Defendant's motion to compel is therefore **DENIED.**

**B. Dismissal of the Superseding Indictment is not warranted**

In the alternative, Mr. Cruz requests that the Court dismiss the Original Indictment based on a purported Brady violation. (Docket No. 58 at 14). Although the Government argued that Defendant's *Motion* was mooted by the return of the Superseding

Indictment, (Docket No. 75 at 2 n.1), the Court nonetheless applies
Mr. Cruz's argument here because the additional charges in the
Superseding Indictment have no bearing on the question of dismissal
based on spoliation of evidence.

As an initial matter, the Court notes that Defendant's
reliance on <u>Brady</u> is misplaced because this is a missing evidence
case, not a lack-of-disclosure case. *See* <u>Femia</u>, 9 F.3d at 993
(describing the "two distinct universes" of nondisclosure of
evidence cases); <u>Esquilin-Montañez</u>, 268 F. Supp. 3d at 316 (noting
that <u>Trombetta</u> and <u>Youngblood</u> controlled in case where the record
was silent about whether the pertinent evidence was actually
destroyed).

    i. <u>Defendant has not evinced bad faith</u>

The Government admits that the destruction of the LMM video
footage may have been negligent. (Docket No. 75 at 7). Based on
the testimony, that is certainly true. Given the number of alleged
drug mule cases in this District, the Government should take steps
to prevent similar lapses from occurring in the future. However,
under First Circuit precedent, even if law enforcement officers
and prosecutors are short-sighted in failing to preserve evidence,
intentionally allow its destruction, and are grossly negligent in
doing so, that is not enough to establish that the Government acted
in bad faith. <u>Garza</u>, 435 F. 3d at 75. Rather, **a defendant must**

**show independent evidence of the government's improper motivation**.

Id. No such evidence was presented at the evidentiary hearing.
Although Defendant alluded to an argument that the video footage
was purposefully destroyed to cover up errors made by TFO Taha in
the affidavit supporting the criminal complaint, Mr. Cruz
presented nothing to support this contention. *See* United States v.
Barton, 995 F.2d 931, 936 (9th Cir. 1993) (finding there was no
bad faith when there was no evidence presented that marijuana
plants were deliberately destroyed to insulate officers from
impeachment); United States v. Esquilin-Montañez, 268 F. Supp. 3d
314, 318 (D.P.R. 2017) (noting speculative assertions of bad faith
would not suffice to establish a due process violation).
Defendant's argument is undercut by testimony from Officer Perez
that, in retrospect, he wished he had bookmarked the video; from
Officer Colon that he attempted to preserve the video; and from
TFO Taha that he endeavored to recover the video from the damaged
disk drives.

Furthermore, where "evidence was destroyed in the course of
implementing routine procedures," a finding of bad faith is
**unlikely**. Garza, 435 F.3d at 76 (citing cases). At the evidentiary
hearing, multiple witnesses testified that surveillance videos
were regularly and automatically deleted after twenty-five to
thirty days had elapsed. Because Mr. Cruz has not pointed to

"evidence that would undermine the government's description of a routine erasure, by no means uncommon," he cannot establish that the video was destroyed in bad faith. <u>United States v. Laurent</u>, 607 F.3d 895, 900 (1st Cir. 2010).

> ii.  <u>The destroyed evidence was neither exculpatory nor irreplaceable</u>

Defendant argued that the video footage contains both exculpatory and impeachment evidence. (Docket No. 58 at 4). **However, he has made no offer as to what that evidence might be.** To establish that evidence is exculpatory, a defendant must do more than present "[m]ere conjecture" without "any supporting evidence or arguments[.]" <u>United States v. Simon</u>, 12 F. 4th 1, 52 (1st Cir. 2021) (citations and internal quotation marks omitted) (referring to requirements for grounding a claimed <u>Brady</u> violation). The exculpatory value of the evidence must be "readily apparent," <u>United States v. Ossai</u>, 485 F.3d 25, 30 (2007), "before the evidence was destroyed." <u>Olszewski v. Spencer</u>, 466 F.3d 47, 55 (1st Cir. 2006).

Mr. Cruz has made no argument as to how the evidence could be exculpatory. Based on the testimony provided by Officers Perez and Colon, it seems the video would have actually shown that Defendant had control over the luggage containing narcotics. Moreover "unless the several officers were collectively lying, it is more

likely than not . . . that the [evidence] would have *inculpated*"
Mr. Cruz. <u>Laurent</u>, 607 F.3d at 900 (emphasis in original).

Defendant's argument as to the footage's value as potential
impeachment evidence is similarly undeveloped in his motion. Based
on defense counsel's line of questioning at the evidentiary
hearing, it appears that the videos would have been used to call
into question TFO Taha's version of events and the affidavit
supporting the criminal complaint. As previously discussed, the
destroyed footage is possibly inculpatory and therefore might
serve as only potentially useful evidence. Assuming, however, that
it had value as impeachment and therefore apparently exculpatory
evidence, the Court considers whether the videos are "to some
extent irreplaceable." <u>Olszewski</u>, 466 F.3d at 57 (citing <u>Femia</u>, 9
F.3d at 994).

Defendant fails to meet his burden to establish
irreplaceability as well. Such a showing requires a defendant to
establish that he "would be unable to obtain comparable evidence
by other reasonably available means." Trombetta, 467 U.S. at 479-
80. Mr. Cruz has not done so. <u>First</u>, he has made no showing that
he cannot recreate the events depicted in the missing footage
through testimony. <u>Olszewski</u>, 466 F.3d at 58. Indeed, both Officers
Perez and Colon testified about what they recalled the video
depicting, and still photographs of the video feed also exist. The

Court also notes that the Government made pertinent disclosures to the Court and to the Defendant on June 6, 2023. (Docket Nos. 61 and 61-1). Second, Mr. Cruz has not established why cross-examination of TFO Taha or other Government witnesses would be insufficient. Id. at 59. Finally, he may choose to testify at trial if he wishes. United States v. Berroa de la Cruz, 556 F. Supp. 3d 56, 63 (D.P.R. 2021) (citing Esquilin-Montañez, 268 F. Supp. 3d at 317)). Since Mr. Cruz has not met his burden under Femia and its progeny, he cannot show that a due process violation occurred.

### iii. Defendant's reliance on *Brady* is unavailing

Assuming, *arguendo*, that Brady and its attendant remedies apply in this circumstance, Mr. Cruz nonetheless would not prevail on his motion. As already discussed, he has not been able to establish that a due process violation occurred. Even if he had, however, Defendant would have to show that he was prejudiced by the violation to prevail on a motion to dismiss an indictment. *See* United States v. Duval, 496 F.3d 64, 73 (1st Cir. 2007) (describing a defendant's burden when seeking to vacate a conviction for a Brady violation). Furthermore, Mr. Cruz makes no argument that the inadvertent deletion of the LMM video footage resulted in any kind of delayed disclosure affecting his trial preparation or strategy and, indeed, Defendant's *Motion* was filed over five months before

the scheduled trial date in this case, giving him ample time to prepare.

The First Circuit has further noted "that, given 'the constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment.'" United States v. Ramos-Gonzalez, 775 F.3d 483, 493 (1st Cir. 2015) (citing United States v. Rivera-Santiago, 872 F.2d 1073, 1088 (1st Cir. 1988)).  Dismissing the indictment is a remedy that is "rare," "drastic," "draconian," and one that would not be justified in a case where a video has been negligently destroyed through "a routine erasure." Laurent, 607 F.3d at 901.

Lastly, as with his motion to compel, Defendant's one-line request to dismiss the Original Indictment on Brady violation grounds is devoid of citations and is, perhaps, "best regarded as a throwaway." United States v. Sepulveda, 15 F.3d 1161, 1195 (1st Cir. 1993). Even if Mr. Cruz had established that a discovery violation had occurred, he has provided no explanation or justification as to why complete dismissal of the indictment is an appropriate remedy. See United States v. Alonso-Vega, 2022 WL 1539526, at *1-2 (D.P.R. 2022) (denying dismissal of the indictment due to defendant's inability to establish concrete harm from discovery violation and failure to provide supporting authority).

Thus, Defendant's motion to dismiss the Superseding Indictment is **DENIED**.

## V.   CONCLUSION

Given that Mr. Cruz has not met his burden to establish that the Government acted in bad faith or destroyed irreplaceable exculpatory evidence, Defendant's *Motion Requesting Order to Compel Discovery or Motion to Dismiss Indictment* (Docket No. 58) is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of October 2023.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE